DOUGLAS JONES v. STATE OF MISSISSIPPI.

[45 South., 145.]

CRIMINAL LAW AND PROCEDURE. *Jury trial. Verdict. Disregard of evidence. Jury must not be arbitrary.*

Although the jury are the judges of the credibility of witnesses and the weight of testimony, a verdict of guilty in a murder case cannot be sustained where predicated of an arbitrary and unreasonable disregard of the positive testimony of an unimpeached independent eyewitness to the homicide.

FROM the circuit court of Tunica county.

HON. JEFFERSON F. BARBOUR, special judge.

Jones, appellant, a negro, was indicted and tried for murder, convicted and sentenced to the penitentiary for life and appealed to the supreme court.

The deceased, Thomas Smith, a negro, was found dead, having been shot in the head.

The evidence relied upon as tending to show appellant's guilt was largely circumstantial; one witness, however, testified that shortly before the dead body was found, appellant rapidly passed him, having a gun in his hand, and requested him to tell the wife of the dead man that he had shot her husband. The appellant, testifying in his own defense, did not deny having killed the deceased, but claimed that he acted in self-defense, saying that the deceased had been for some time paying improper attention to appellant's wife in spite of his repeated remonstrance, and had threatened violence if appellant should interfere; that deceased had written to appellant's wife several times, and, on the night before the killing, appellant discovered that the deceased had written another and improper note to her; and this caused appellant, at his earliest opportunity the next day, to go and see the deceased in regard to

the matter, carrying the note with him, and when he showed it to deceased and upbraided him in a peaceable way touching it, deceased turned, cursed appellant, reached suddenly into his bosom as if for a deadly weapon; whereupon appellant, having his gun with him, shot deceased in self-defense, and subsequently voluntarily surrendered himself to the sheriff.

The testimony of the witness for the defendant, Miller Shelly, was practically the same as appellant's, as to the circumstances of the killing, he being an eyewitness to the tragedy. The state proved that the deceased was unable to read or write, but made no attempt to impeach the testimony of the witness, Miller Shelly, or of the appellant.

*F. A. Montgomery,* for appellant.

The evidence introduced by the state to convict appellant was purely circumstantial, and the trial court should have granted the peremptory instruction asked by him. In all of the testimony of the different witnesses introduced by the state there is nothing to show that appellant committed the homicide, except the testimony of one witness, Dallas Jones, to the effect that the appellant told him, shortly after the killing, to tell the wife of the deceased that he had killed her husband. Certainly this was insufficient to uphold a conviction of murder.

Even if a legal presumption of appellant's guilt existed as a result of the circumstantial evidence introduced by the state, such presumption could not stand before the direct testimony of Miller Shelly, a disinterested eyewitness of the homicide, whose testimony is in perfect harmony with the appellant's explanation of the homicide.

The whole cause of the difficulty which brought about the killing of the deceased was the continued licentious pursuit of appellant's wife by the deceased before his death, and in view of what the appellant and the witness, Miller Shelly, testified, the jury had no right to reject arbitrarily their testimony and draw deductions from supposed circumstances surrounding the

case.   The appellant is a competent witness in his own behalf, and the jury cannot capriciously and wantonly reject his testimony.   *Buckley* v. *State,* 62 Miss., 705; *Woods* v. *State,* 67 Miss., 575; s.c., 7 South., 495.

If this were a civil suit, there would be no doubt about the proposition that the appellant would, under circumstances such as shown here, be entitled to a peremptory instruction in his favor.   The courts have with entire unanimity held that where there is no material conflict in the testimony, the trial court must give a requested peremptory instruction.   For instance, under the law of this state, if a domestic animal be found dead near a railroad track, and there be blood upon the track, and other marks showing that it had been killed by a running train, the railroad company will be liable for the killing, unless proof be made that the accident was unavoidable after the exercise of reasonable prudence on the part of the company's employes.   Yet, this court has repeatedly held that, where an engineer of the railroad company has testified, in such a case, to a state of facts which exonerates the railroad company from liability, and there are no eyewitnesses of the injury, and no conflict between the evidence and the physical facts, the trial court must instruct the jury to find for the railroad company.   In the case at bar, the deceased was shown to have been killed by some person using a deadly weapon, hence the presumption of guilt may be said to arise from its use; but, after it was shown, by direct and unimpeached testimony of two eyewitnesses, that the deceased was killed by the appellant in self-defense, the presumption vanished.   Certainly, when the law is as above stated in civil cases, a human being may not be convicted of the charge of murder and sentenced to the penitentiary for the remainder of his natural life, under the facts shown in evidence here.   *Middleton* v. *State,* 80 Miss., 393; s.c., 31 South., 809; *Allen* v. *State,* 88 Miss., 159; s.c., 40 South., 744.

Conviction must rest upon affirmative proof of guilt and

not upon a defendant's failure to show his innocence. *Owens* v. *State,* 80 Miss., 499.

In the case of *Knights of Honor* v. *Fletcher,* 78 Miss., 377; s.c., 28 South., 872; s.c., 29 South., 523, this court held that the defendant was entitled to a peremptory instruction where the evidence showed suicide, and there was nothing but conjecture to support the theory of murder.

*George Butler,* assistant attorney-general, for appellee.

Appellant contends that the verdict of guilty was not supported by the evidence, and that a peremptory instruction in appellant's favor should have been granted; but his contention is not supported by the record. The state showed that the appellant, on the morning of the killing, was at the home of his father-in-law, and taking up a Winchester shotgun, stated that he was going home, a distance of about a mile, and would return that evening; that after taking the gun, he went into the yard, had an extended conversation with his wife, and subsequently stated that instead of going home he would hunt around for a while; that shortly after leaving the home the report of a gun was heard, and in a few moments thereafter appellant passed hastily the home of a witness, gun in hand, requesting the witness to tell the wife of deceased that he had shot her husband, and for her to go and see about him. When the deceased was found, lying dead in a pool of blood, shot through the head, no pistol or other deadly weapon was found upon or near him. The circumstances did not support the confused testimony of the appellant, as to his having acted in self-defense.

The testimony of Miller Shelly is improbable. The killing occurred in September. The witness did not tell anyone anything about the homicide until the following January, after appellant had been tried in and bound over by the committing court.

The finding of the jury, under the physical circumstances shown in evidence, does not shock conscience.

WHITFIELD, C. J., delivered the opinion of the court.

We are not satisfied to affirm the judgment in this case. It is impossible for the mind to repose with any confidence on the verdict rendered on the testimony in the record. Both the eyewitnesses, the defendant and the witness Miller Shelly, make out a case favorable to the defendant. The state is driven to rely upon the physical facts, and the mere statement of the defendant that he had killed the deceased, without showing how or under what circumstances. The state itself, by a witness, shows that the defendant gave the same account of the killing immediately after it occurred that he did upon the witness stand a year later. Neither the defendant nor the witness Miller Shelly was impeached in any mode known to the law. In this very unsatisfactory condition of the record, we prefer to reverse this case on the facts and remand the cause for a new trial.

If the witness Shelly is a witness not to be believed, the state may easily impeach him; and it may be, besides, that the state may be able to procure other testimony on another trial more satisfactory. We cannot, with both the eyewitnesses making out a case favorable to the defendant, and the state offering nothing but a mere statement that the defendant had killed the deceased, and certain physical facts which in our judgment are of little value as showing guilt, get our consent to affirm this conviction of murder. The jury, it is true, are the judges of the credibility of the witnesses and the weight of the testimony; but there are cases, and this seems to us to be one of them, in which the jury have arbitrarily and without reason appearing in the record disregarded the positive testimony of an independent eyewitness. If we could find in the testimony of Miller Shelly anything which would warrant the jury in discrediting him, it would be different; but the witness testified with unusual intelligence for one of his race, and, so far as

we can see from his whole testimony, seems to have delivered his testimony fairly and without any motive disclosed for falsification.

*Reversed and remanded.*